JERRY H. STEIN (State Bar No. 78309)
LEVIN & STEIN
28494 Westinghouse Place, Suite 201
Valencia, CA 91355
Telephone: (310) 207-4663
Facsimile: (310) 207-2803
Email: jstein@lscslaw.com

DANIEL S. HOUSER (State Bar No. 205536)
LEVIN & STEIN
201 Queen Anne Ave. N., Suite 400
Seattle, WA 98109
Telephone: (206) 388-0660
Facsimile: (206) 286-2660
Email: dhouser@condodefects.com

E-filing

Attorneys for Plaintiff Aspen Grove Owners Association

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**MEJ**

| | |
|---|---|
| ASPEN GROVE OWNERS ASSOCIATION, a Washington non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>PARK PROMENADE APARTMENTS, LLC, a California limited liability company; WINDBRIDGE, LLC, a California limited liability company; HOLTON KABILI SEATTLE, LLC, a dissolved Colorado limited liability company; ALTMAN SEATTLE, LLC, a dissolved Colorado limited liability company; DOE DECLARANT AFFILIATES 1-20; DON ALTMAN, an individual; SCOTT A. HOLTON, an individual; SHIMON KABILI, an individual; and DOE PRINCIPALS 1-10,<br><br>Defendants. | No: **CV 08 3873**<br><br>COMPLAINT FOR:<br>(1) Breach of Implied Warranty of Quality under WCA<br>(2) Failure to Provide or Amend Public Offering Statement<br>(3) Misrepresentations and Omissions in Public Offering Statement<br>(4) Fraudulent Concealment<br>(5) Breach of Fiduciary Duty<br>(6) Violation of the Consumer Protection Act<br>(7) Relief from Fraudulent Transfers<br>(8) Improper Winding Up of Dissolved LLC<br><br>DEMAND FOR JURY TRIAL |

1

Plaintiff ASPEN GROVE OWNERS ASSOCIATION ("the Association") hereby asserts

the following claims for relief:

## I.     JURISDICTION

1.1     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because

the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is

between a citizen of Washington (Plaintiff) and citizens of California and Colorado (Defendants).

## II.     VENUE

2.1     Venue lies in this court pursuant to 28 U.S.C. § 1391(a)(3) because jurisdiction of

this action is founded solely on diversity of citizenship, the defendants WINDBRIDGE, LLC and

PARK PROMENADE APARTMENTS, LLC are subject to personal jurisdiction in this district,

and there is no district in which this action may otherwise be brought in its entirety.

## III.     INTRADISTRICT ASSIGNMENT

3.1     For purposes of Civil L.R. 3-2(c) and (d), this action arises in the city of San

Francisco, San Francisco County.

## IV.     PARTIES

4.1     Pursuant to a Declaration of Condominium for Aspen Grove Condominiums ("the

Declaration"), and its Articles of Incorporation, the Association, a Washington non profit

corporation, was established under the Washington Condominium Act, Revised Code of

Washington ("RCW"), Chapter 64.34, as the homeowners association for the Aspen Grove

Condominiums development ("the Project.") Pursuant to the Declaration, and/or its amendments,

and pursuant to RCW 64.34.304, the Association has the duty to maintain, repair, replace and

restore all of the common elements and Association property located in and on the Project, located

in King County, Washington, and has the duty to repair, replace and restore damage to the Project.

4.2    Pursuant to RCW 64.34.304(1)(d), the Association has the right to institute litigation "in its own name on behalf of itself or two or more unit owners on matters affecting the condominium." The Association is instituting this action pursuant to that statute, on behalf of itself and all of the unit owners on matters affecting the Project.

4.3    PARK PROMENADE APARTMENTS, LLC ("Park Promenade") is a California limited liability company. Park Promenade is named in the Declaration as a Declarant of the Project. The Association is informed and believes, and on that basis alleges, that Park Promenade had an ownership interest in the Project, and/or had or has an ownership interest in the Project and the sales proceeds from the Project.

4.4    WINDBRIDGE, LLC ("Windbridge") is a California limited liability company. Windbridge is named in the Declaration as a Declarant of the Project. The Association is informed and believes, and on that basis alleges, that Windbridge had an ownership interest in the Project, and/or had or has an ownership interest in the Project and the sales proceeds from the Project.

4.5    HOLTON KABILI SEATTLE, LLC ("Holton Kabili") is a voluntarily dissolved Colorado limited liability company. Holton Kabili is named in the declaration as a Declarant of the Project. The Association is informed and believes, and on that basis alleges, that Holton Kabili had an ownership interest in the Project, and/or had or has an ownership interest in the Project and the sales proceeds from the Project.

4.6    ALTMAN SEATTLE, LLC (Altman Seattle) is a Colorado limited liability and is named in the Declaration as a Declarant of the Project, and is a "Dealer" of the Project units pursuant to RCW 64.34.020(12), and is the entity which transferred title to the unit owners. The Association is informed and believes, and on that basis alleges, that Altman Seattle had an

3

ownership interest in the Project, and/or had or has an ownership interest in the Project and the sales proceeds from the Project.

4.7     DOE DECLARANT AFFILIATES 1-20 are non-Washington residents, persons and entities who qualify as "alter egos" of any of the Declarants under Washington law, and/or who pursuant to RCW 64.34.020(1) and/or RCW 19.40.011(1) qualify as "affiliates" of the Declarants any other of DOE DECLARANT AFFILIATES 1-20, and/or are persons or entities who qualify pursuant to RCW 19.40.011(7) as "insiders" of Declarants and/or "insiders" of any other of DOE DECLARANT AFFILIATES 1-20.

4.8     Park Promenade, Holton Kabili, Altman Seattle, and DOE DECLARANT AFFILIATES 1-20 are collectively referred to herein as the "Declarants."

4.9     SHIMON KABILI ("Mr. Kabili") is believed to be a citizen of Israel, a resident of Colorado, and the managing member of Holton Kabili, Park Promenade and Windbridge. The Association is informed and believes, and on that basis alleges, that at all times relevant hereto Kabili was a shareholder, officer, director, member, alter ego, and/or principal of Holton Kabili, Park Promenade, Windbridge, and/or Altman Seattle, and/or other unknown affiliates of the Declarants, and had or does currently have an ownership interest in the Project and/or in the sales proceeds from the Project.

4.10    DON ALTMAN ("Mr. Altman") is a resident of Colorado and on information and belief is the sole member of Altman Seattle, LLC. The Association is informed and believes, and on that basis alleges, that at all times relevant hereto, Mr. Altman was a shareholder, officer, director, member, alter ego, and/or principal of Altman Seattle, and/or other unknown affiliates of the Declarants, and had or does currently have an ownership interest in the Project and/or in the sales proceeds from the Project.

4

4.11    SCOTT A. HOLTON (Mr. Holton) is a resident of Colorado and on information and belief is a member of Holton Kabili Seattle, LLC. The Association is informed and believes, and on that basis alleges, that at all times relevant hereto, Mr. Holton was a shareholder, officer, director, member, alter ego, and/or principal of Holton Kabili Seattle, and/or other unknown affiliates of the Declarants, and had or does currently have an ownership interest in the Project and/or in the sales proceeds from the Project.

4.12    DOE PRINCIPALS 1-10 are non-Washington residents and shareholders, officers, directors, members, alter egos, and/or principals of the Declarants and unknown affiliates of the Declarants who had or do currently have an ownership interest in the Project and/or in the sales proceeds from the Project.

4.13    Mr. Kabili, Mr. Altman, Mr. Holton and DOE PRINCIPALS 1-10 are collectively referred to herein as "Declarants' Principals." All or some of Declarants' Principals are "insiders" of all or some of Declarants pursuant to RCW 19.40.011. Moreover, all or some of Declarants' Principals are representative, successor, or assign of some or all of the Declarants.

## V.    FIRST CLAIM – AGAINST DECLARANTS FOR BREACH OF IMPLIED WARRANTIES OF QUALITY UNDER THE WASHINGTON CONDOMINIUM ACT.

5.1    Pursuant to RCW 64.34.445 of the Washington Condominium Act ("the WCA"), the Declarants impliedly warranted that the units and common elements in the Project were suitable for the ordinary uses of real estate of its type, and that the improvements made or contracted for by the Declarants or on their behalf were free from defective materials and were constructed in accordance with sound engineering and construction standards, and in a workmanlike manner in compliance with all laws then applicable.

5

5.2    The Declarants, or others acting on their behalf, made and/or contracted for improvements to property that now constitute the Project's common elements, limited common elements, and units.

5.3    The Declarants breached their implied warranties under the WCA in that there are numerous defects or deficiencies in the Project's materials, installation of the materials, design and/or construction of the Project's building envelope system and underlying components, its roofs, windows, structural components, architectural components, and fire and life safety systems, and mechanical and electrical systems.   Some or all of these defects or deficiencies render units and common elements unsuitable for ordinary uses of real estate of their type.   Further, the Declarants negligently breached their implied warranties under the WCA in that there are latent physical hazards at the Project which render it, or portions of it, unsuitable for ordinary uses of real estate of its type.

5.4    The defects and deficiencies are both in the original construction, and in improvements to the Project made or contracted for by or on behalf of the Declarants.

5.5    In addition to the defects or deficiencies listed above, the Association is informed and believes, and on that basis alleges, that there are other components of the Project which are defectively designed, installed and/or constructed, and which would be revealed through additional investigation.

5.6    The defects or deficiencies listed above have resulted in physical damage to the common elements, limited common elements, and units of Project, as well as personal property of unit owners.   Some of the defects and deficiencies began causing such physical damage while construction or renovations were under way.   The defects and deficiencies are presently causing such physical damage, and will likely result in additional physical damage.   The physical damage

6

includes, but is not limited to, damage caused by water intrusion into and through the building envelope and its underlying components, which has caused exterior and interior building surfaces and underlying components to deteriorate prematurely, and which has physically damaged various other building components and other property, including personal property, and has reduced the useful life and structural integrity of the Project's building components.

5.7     As a direct and proximate result of the relevant Declarants' conduct, the Association and its unit owners have been damaged in excess of $75,000, in an amount to be proven at trial. Such damages include, but are not limited to, the cost of repairing the damage to the Project caused by the defective design, workmanship and materials; the cost of correcting defective conditions and damage, including investigative costs and scope-of-repair development costs as necessary components thereof; the loss of use of the units and common areas; the loss of the marketability of the units; and operating and reserve expenses over and above those reasonably anticipated by the Association.

5.8     Pursuant to RCW 64.34.455, and/or the sales agreements used by the Declarants, the Association is entitled to its reasonable attorneys' fees and other costs incurred in prosecuting this action.

## VI.    SECOND CLAIM – AGAINST DECLARANTS FOR FAILURE TO PROVIDE VALID PUBLIC OFFERING STATEMENT AND FAILURE TO PROVIDE AMENDED PUBLIC OFFERING STATEMENT

6.1     The Project is a "conversion condominium" as defined in RCW 64.34.020, for which public offering statements have been first delivered pursuant to chapter 64.34 RCW after August 1, 2005.

6.2     In addition or the alternative, Declarants did not amend the public offering statement for the Project and/or did not deliver an amended public offering statement to any unit purchaser as

required by RCW 64.34.415(5), RCW 64.34.405(1), RCW 64.34.405(3), and RCW 64.34.420(1) after August 1, 2005, to reflect change in the identity of Declarants and/or changes in other material information, including defects and damage discovered by Declarants during the ongoing conversion process.

6.3     On information and belief, in converting the Project buildings and facilities to condominiums, the Declarants did not seek or receive a permit for "rehabilitative construction" as defined by RCW 64.55.020.

6.4     In converting the Project buildings and facilities to condominiums, the Declarants did not submit building enclosure design documents to a building department pursuant to RCW 64.55.020.

6.5     In converting the Project buildings and facilities to condominiums, the Declarants did not have the Project building enclosures inspected by a qualified inspector pursuant to RCW 64.55.030-050.

6.6     Pursuant to RCW 64.34.415, RCW 64.55.090, and RCW 64.34.410(nn), the Declarants had a duty to hire a qualified building enclosure inspector to: (1) inspect the Project, by such intrusive or other testing, such as removal of siding or other building enclosure materials, believed by the inspector in his or her professional judgment to be necessary to ascertain the manner in which the building enclosure was constructed; (2) evaluate, to the extent reasonably ascertainable and in the professional judgment of the inspector the condition of the building enclosure including whether such condition has adversely affected or will adversely affect the performance of the building enclosure to waterproof, weatherproof, or otherwise protect the building or its components from water or moisture intrusion; (3) include in an inspection report recommendations for repairs to the building enclosure that in the professional judgment of the

8

qualified building inspector are necessary to repair a design or construction defect in the building enclosure that results in the failure of the building enclosure to perform its intended function and allows unintended water penetration not caused by flooding and repair damage thereby caused; and (4) include in an inspection report a statement of the extent of the building enclosure inspection performed by the qualified inspector, the information obtained as a result of that inspection, the manner in which any required repairs were performed, the scope of those repairs, and the names of the persons performing those repairs.

6.7     Pursuant to RCW 64.55.090(e) and RCW 64.34.410(1)(nn) and RCW 64.34.415(1)(b), the Declarants had a duty to provide the above-referenced inspection and repair report, signed by a qualified building enclosure inspector, to unit purchasers as part of a public offering statement.

6.8     Declarants breached their duties under RCW 64.34.415, RCW 64.55.090 and RCW 64.34.410(nn) in that: (1) the Declarants caused no intrusive or other testing of the building enclosure to be performed; (2) the Declarants did not cause a qualified building enclosure inspector to evaluate, to the extent reasonably ascertainable, the condition of the building enclosure; (3) the Declarants did not cause a qualified building inspector to report on recommendations for repairs necessary to repair a design or construction defect in the building enclosure that results in water penetration; (4) the Declarants did not cause a qualified building enclosure inspector to report on the extent of the building envelope inspection performed, information obtained as a result of that inspection, the manner in which required repairs were performed, the scope of the repairs, or the names of the persons performing those repairs.

6.9     Declarants breached their duties under RCW 64.55.090(e), RCW 64.34.415, RCW 64.34.410(1)(nn) in that the inspection report included with the public offering statements delivered

**COMPLAINT FOR DAMAGES**

to the Project's unit purchasers was not signed, and/or not signed by a qualified building enclosure inspector.

6.10    Pursuant to RCW 64.55.090, Declarants' failure to deliver an inspection and repair report that complies with RCW 64.55.090 constituted a failure to deliver a public offering statement for purposes of Chapter 64.34 RCW, the WCA.

6.11    As a direct and proximate result of the Declarants' failure to deliver a public offering statement containing an inspection and repair report that complies with RCW 64.55.090 and/or RCW 64.34.415, and as a result of the Declarants' failure to amend the public offering statement as required by statute, the Association and its unit owners have suffered property damage as described above, and have been damaged in excess of $75,000, in an amount to be determined at trial. Such damages include, but are not limited to, the cost of repairing the damage to the Project caused by the defective design, workmanship and materials; the cost of correcting defective conditions and damage, including investigative costs and scope-of-repair development costs as necessary components thereof; the loss of use of the units and common areas; the loss of the marketability of the units; operating and reserve expenses over and above those reasonably anticipated by the Association; and other consequential damages.

6.12    Pursuant to the WCA, the Association is entitled to its reasonable attorneys' fees incurred in prosecuting this action.

6.13    In addition, the Association is entitled to the greater of (a) all actual damages or (b) ten percent of the price of each unit for willful failure to provide a public offering statement, or three percent of the purchase price for each unit for every other failure to provide a public offering statement.

## VII. THIRD CLAIM – AGAINST DECLARANTS AND DECLARANTS' PRINCIPALS FOR MISREPRESENTATIONS AND/OR OMISSIONS OF MATERIAL FACT

7.1     On information and belief, Declarants and Declarants' Principals were aware of, or during the course of sales of units became aware of, facts regarding the presence of defects in the physical condition of the Project, as well as facts regarding physical hazards that particularly affect the condominium, all of which were not readily ascertainable by unit purchasers upon reasonable inspection.

7.2     By reason of this factual knowledge of defective conditions and physical hazards, Declarants and Declarants' Principals also knew, or in the exercise of reasonable care should have known, that the reserve estimate and operating budget (including but not limited to assumptions regarding remaining useful life of Project components and the number of components in need of attention), and other materials included in the public offering statement(s), were inaccurate, deceptive, and misleading.

7.3     Declarants and Declarants' Principals intentionally and/or negligently failed to disclose facts regarding known defects and physical hazards, and intentionally and/or negligently failed to adjust the reserve estimate and operating budget to reflect the actual condition of the Project.

7.4     Pursuant to RCW 64.34.415(1)(a), Declarants and Declarants' Principals had a duty to include in the public offering statement for the Project either a copy of a report prepared by an independent, licensed architect or engineer, or a statement based on such report, which report or statement describes, to the extent reasonably ascertainable, the present condition of all structural components and mechanical and electrical installations material to the use and enjoyment of the Project.

11

---

**COMPLAINT FOR DAMAGES**

7.5     Pursuant to RCW 64.34.415, RCW 64.55.090, and RCW 64.34.410(nn), the Declarants and Declarants' Principals also had a duty to hire a qualified building enclosure inspector to: (1) inspect the Project, by such intrusive or other testing, such as removal of siding or other building enclosure materials, believed by the inspector in his or her professional judgment to be necessary to ascertain the manner in which the building enclosure was constructed; (2) evaluate, to the extent reasonably ascertainable and in the professional judgment of the inspector the condition of the building enclosure including whether such condition has adversely affected or will adversely affect the performance of the building enclosure to waterproof, weatherproof, or otherwise protect the building or its components from water or moisture intrusion; (3) include in an inspection report recommendations for repairs to the building enclosure that in the professional judgment of the qualified building inspector are necessary to repair a design or construction defect in the building enclosure that results in the failure of the building enclosure to perform its intended function and allows unintended water penetration not caused by flooding and repair damage thereby caused; and (4) include in an inspection report a statement of the extent of the building enclosure inspection performed by the qualified inspector, the information obtained as a result of that inspection, the manner in which any required repairs were performed, the scope of those repairs, and the names of the persons performing those repairs.  The Declarants had a further duty to provide said building enclosure inspection and repair report, signed by a qualified building enclosure inspector, to unit purchasers as part of a public offering statement.

7.6     In preparing or assisting in the preparation of the public offering statement for the Project, Declarants and Declarants Principals intentionally and/or negligently failed to include a report or statement that complies with RCW 64.34.415(1)(a).  The report that was included with the public offering statement fails to meet statutory requirements, and is deceptive and misleading in

that it: (a) does not disclose material defective conditions that were reasonably ascertainable by an independent, licensed architect or engineer undertaking a reasonable, good-faith examination of the Project's common elements, and/or (b) materially misrepresents the condition of the Project's structural and/or mechanical and/or electrical systems, and/or (c) does not reflect the condition of the relevant components at the time of sale to the public.

7.7    Moreover, in preparing or assisting in the preparation of the public offering statement for the Project, Declarants and Declarants' Principals intentionally and/or negligently failed to include a building enclosure report or statement that complies with RCW 64.34.415 in that the report that was included in the public offering statement contains: no report on inspection of the building enclosure, no report on the condition of the building enclosure, no recommendations for repair of the building enclosure, no statement as to the extent of any inspection, no statement of information obtained in such building enclosure inspection, no description of repairs, and no statement of the names of persons conducting repairs to the building enclosure.

7.8    The misrepresentations and omissions described above concerned facts material to unit owners' decisions to purchase property at the Project, and to the Association's planning and assessments for reserves and operating expenses.

7.9    On information and belief, discovery will reveal further material misrepresentations and omissions of material fact in the course of sale of units.

7.10    As a direct and proximate result of the misrepresentations in and/or omissions of material fact from the public offering statement, the Association and its unit owners have suffered property damage as described above, and have been damaged in an amount in excess of $75,000, to be determined at trial. Such damages include, but are not limited to, the cost of repairing the damage to the Project caused by the defective design, workmanship and materials; the cost of

13

correcting defective conditions and damage, as well as latent physical hazards, including investigative costs and scope-of-repair development costs as necessary components thereof; the loss of use of the units and common areas; the loss of the marketability of the units; operating and reserve expenses over and above those reasonably anticipated by the Association; and other consequential damages.

7.11   Pursuant to RCW 64.34.405(3) and the common law, Declarants and Declarants' Principals are liable for the misrepresentations in and omissions of material fact from the public offering statement.

7.12   Pursuant to the WCA, the Association is entitled to its reasonable attorneys' fees incurred in prosecuting this action.

## VIII.   FOURTH CLAIM – AGAINST DECLARANTS AND DECLARANTS' PRINCIPALS FOR FRAUDULENT CONCEALMENT

8.1   Declarants and Declarants' Principals, each by virtue of superior knowledge of the Project, and/or by virtue of knowledge of concealed defects and conditions that pose a danger to the property, health and lives of the unit purchasers and their invitees, each had an affirmative duty to disclose, or cause the Declarant to disclose, material facts regarding the physical condition of the Project to unit purchasers that were unknown to the unit purchasers, and which were not apparent on reasonable inspection.

8.2   Declarants and Declarants' Principals breached their duty to disclose concealed defects and conditions to unit purchasers.

8.3   Furthermore, Declarants and Declarants' Principals represented existing facts concerning the physical condition of the Project and the cost to maintain it in the public offering statement, which representations were material to the purchase of the units.  Those representations

14

falsely characterized or failed to disclose the true physical condition of the Project, and understated the costs to maintain it. Declarants and Declarants' Principals knew that these representations were false, or were ignorant of their truth, and intended that unit purchasers at the Project rely on those representations. For their part, unit purchasers were ignorant of the false character of these representations in the public offering statement regarding the physical condition of the Project and the cost to maintain it, and relied on the false representations in purchasing units (as was their right under the Condominium Act), to their consequent damage.

8.4    As a direct and proximate result of fraudulent concealment by Declarants and Declarants' Principals, Plaintiff has suffered property damage as described above, and has been damaged in an amount in excess of $75,000, to be determined at trial. Such damages include, but are not limited to, the cost of repairing the damage to the Project caused by the defective design, workmanship and materials; the cost of correcting defective conditions and damage, as well as latent physical hazards, including investigative costs and scope-of-repair development costs as necessary components thereof; the loss of use of the units and common areas; the loss of the marketability of the units; operating and reserve expenses over and above those reasonably anticipated by the Association, and other consequential damages.

## IX.    FIFTH CLAIM – AGAINST DECLARANTS AND DECLARANTS' PRINCIPALS FOR BREACH OF FIDUCIARY DUTY

9.1    Some or all of the Declarants appointed some or all of the Declarants' Principals, or other non-parties to this action, to act as the Association's Board of Directors during the period in which the Declarants maintained control of the Association's affairs pursuant to RCW 64.34.308(4).

9.2     The members of the Association's Board of Directors so appointed by the Declarants acted as agents of the Declarants in governing the Association.

9.3     The members of the Declarant-appointed board of directors, and their principals, owed the Association's unit owners a fiduciary duty of undivided loyalty and care in managing the affairs of the Association pursuant to RCW 64.34.308(1). Despite their fiduciary duty to the Association's unit owners, at all times Declarant-appointed board members maintained their loyalty to the Declarants, and acted to promote the interests of the Declarants instead of the unit owners.

9.4     On information and belief, during their tenure on the Association's Board, the Declarant-appointed board members became aware, or should have become aware, of serious construction defects in the Project, understatement of the operating budget established by Declarants, and understatement of the Reserve Estimate as established by Declarants. Such knowledge is imputed to the Declarants as principals.

9.5     The Declarants and Declarant-appointed board members failed to disclose to the Association, or otherwise act reasonably in response to the facts of which they became aware regarding the presence of defects, physical hazards, and understatement of the operating and reserve budgets.

9.6     Though they knew or should have known of defective construction, physical hazards, and poor physical condition of concealed portions of the Project, Declarants and Declarant's Principals who served as board members failed to cause the Association to undertake an investigation of the construction quality of the Project and physical hazards. Moreover, Declarants and Declarant's Principals who served as board members failed to demand that the Declarants repair and remedy the defects and physical hazards, or compel Declarants to do so.

9.7     Declarants and Declarant's Principals who served as board members negligently or intentionally failed to adopt a reasonable budget and/or establish reasonable reserves during the period of declarant control of the Association.

9.8     On information and belief, Declarants and Declarant's Principals who served as board members negligently or intentionally failed to collect assessments due from Declarant on unsold units.

9.9     Declarants and Declarant's Principals who served as board members negligently or intentionally failed to monitor, inspect, supervise, or hire competent professionals to monitor, inspect and supervise ongoing work by contractors and casual labor employed by Declarants to make improvements to the Project's units and common elements, to ensure that such work was properly performed.

9.10     The acts and omissions of Declarants and Declarant's Principals who served as board members have caused, and continue to cause, property damage to the Project's units, common elements, and limited common elements, as well as personal property of unit owners.

9.11     These breaches of duty proximately caused injury to the Association's unit owners in an amount in excess of $75,000, to be determined at trial which.  Such damages include, but are not limited to, the cost of repairing the damage to the Project caused by the defective design, workmanship and materials; the cost of correcting defective conditions and damage, including investigative costs and scope-of-repair development costs as necessary components thereof; the loss of use of the units and common areas; the loss of the marketability of the units; operating and reserve expenses over and above those reasonably anticipated by the Association, and other consequential damages.

9.12     Pursuant to the WCA and/or other applicable law, the Association is entitled to its reasonable attorneys' fees incurred in prosecuting this action.

## X.     SIXTH CLAIM – AGAINST DECLARANTS AND DECLARANTS' PRINCIPALS FOR VIOLATION OF THE CONSUMER PROTECTION ACT.

10.1     Plaintiff re-alleges and incorporates by reference paragraphs 1.1 through 9.12 above.

10.2     The conduct of Declarants and Declarants' Principals as described above constitute unfair or deceptive acts or practices in trade or commerce which impact the public interest in violation of RCW 19.86 et seq.

10.3     As a proximate result of these unfair or deceptive acts or practices,  the Association has been damaged in an amount in excess of $75,000, to be determined at trial which includes, but is not limited to, the cost of repairing the damage to the Project caused by the defective design, workmanship and materials; the cost of correcting defective conditions and damage, including investigative costs and scope-of-repair development costs as necessary components thereof; the loss of use of the units and common areas; the loss of the marketability of the units; operating and reserve expenses over and above those reasonably anticipated by the Association, and other consequential damages.

10.4     Pursuant to Chapter 19.86 RCW, the Association is entitled to its reasonable attorneys' fees incurred in prosecuting this action.

## XI.    SEVENTH CLAIM – AGAINST DEVELOPER DEFENDANTS FOR DISGORGMENT OF FRAUDULENT TRANSFERS.

11.1     The Association is informed and believes, and on that basis alleges, that the Declarants have engaged in improper conveyances within the meaning of RCW 19.40.041 and 19.40.051 in that:

a. All or some have transferred assets without receiving a reasonably equivalent value in exchange for the transfer or the obligation, and each transferor (i) was engaged or about to engage in a business or a transaction for which the remaining assets were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became dues; and/or

b. All or some made transfers or incurred obligations without receiving a reasonably equivalent value in exchange for the transfer or obligation, and each was insolvent at the time or became insolvent as a result of the transfer or obligation; and/or

c. The transfer was made to an "insider" for an antecedent debt, the transferor was insolvent at that time, and the insider had reasonable cause to believe that the transferor was insolvent.

11.2 As a result of the improper conveyances, the Association is entitled to all of the remedies set forth in RCW 19.40.071 and 19.40.081, including but not limited to:

a. Attachment of property;

b. Avoidance of the transfer or obligation to the extent necessary to satisfy the Association's claim; and

c. An injunction against further disposition by Declarants and their transferees of the assets transferred or of other property.

## XII.   EIGHTH CLAIM – FOR IMPROPER WINDING UP

12.1 On information and belief, defendants SCOTT A. HAMILTON and SHIMON KABILI negligently or intentionally failed to exercise their duties of due care in winding up the affairs of HOLTON KABILI SEATTLE, LLC under Colorado Revised Statutes §7-80-404(2), and failed to act consistently with their obligations of good faith and fair dealing under Colorado

Revised Statutes §7-80-404(3), by, among other things, failing to make reasonable provision for Holton Kabili Seattle, LLC to fulfill its ongoing obligations and/or respond to claims.

12.2    On the same information and belief, the Association contends that in failing to make reasonable provision for claims against HOLTON KABILI SEATTLE, LLC which claims reasonably should have been expected, defendants SCOTT A. HOLTON and SHIMON KABILI failed to properly wind up HOLTON KABILI SEATTLE, LLC in violation of their fiduciary duty the LLC's creditors, including their duties the Association and its unit owners.  Said fiduciary duty arose at the latest when it became apparent that HOLTON KABILI SEATTLE, LLC would become or would be rendered insolvent.

12.3    By reason of said violation of their duties in winding up HOLTON KABILI SEATTLE, LLC, and/or by reason of their breaches of fiduciary duties to creditor of HOLTON KABILI SEATTLE, LLC, plaintiffs are entitled to some or all of the following remedies: an order piercing the corporate veil of HOLTON KABILI SEATTLE, LLC and imposing liability of the declarant HOLTON KABILI SEATTLE, LLC directly on defendants SCOTT A. HOLTON and SHIMON KABILI; imposition of a constructive trust on all distributed and undistributed assets of HOLTON KABILI, LLC, as well as on the proceeds of such assets;  an order directing the members and transferees of HOLTON KABILI SEATTLE, LLC to disgorge assets or equivalent funds to HOLTON KABILI SEATTLE, LLC.

### XIII.   PRAYER FOR RELIEF

WHEREFORE, the Association prays as follows:

14.1.   For judgment against the Declarants and Declarants' Principals, jointly and severally, for damages, including punitive damages, according to proof for:

**COMPLAINT FOR DAMAGES**

a.   Breach of implied warranties of quality under the Washington Condominium Act;

b.   Failure to provide public offering statement and/or to amend the public offering statement;

c.   Misrepresentations in and/or omissions of material fact;

d.   Fraudulent concealment;

e.   Breach of fiduciary duty;

g.   Liability as principal for agent's breach of fiduciary duty;

h.   Violation of the Consumer Protection Act;

i.   Attorney fees pursuant to statute and/or contract;

14.2.   For a judgment or order(s) for avoidance of all improper transfers or obligations to the extent necessary to satisfy the Association's claims, and of injunction against further disposition by the Declarants and their transferees of the assets transferred or of other property;

14.3.   For a judgment or order(s) piercing the corporate veil of HOLTON KABILI SEATTLE, LLC and imposing liability of the Declarant HOLTONA KABILI SEATTLE, LLC directly on defendants SCOTT A. HOLTON and SHIMON KABILI;

14.4.   For a judgment or order imposing a constructive trust on all distributed and undistributed assets of HOLTON KABILI SEATTLE, LLC as well as on the proceeds of such assets; and/or an order directing the members and transferees of HOLTON KABILI SEATTLE, LLC to disgorge assets or funds to HOLTON KABILI SEATTLE, LLC;

14.5.   For such other and further relief as the Court may deem just and equitable.

//

//

21

## XIV. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial of all issues triable of right by a jury.

## XV. CORPORATE DISCLOSURE STATEMENT

Plaintiff, Aspen Grove Owners Association (the "Association") is a Washington nonprofit corporation organized pursuant to RCW 64.34.300. The Association has no parent corporation and no publicly held corporation owns ten percent or more of the Association's stock.

DATED this 11th day of August, 2008.

LEVIN & STEIN

By:_____
    Jerry H. Stein
    Daniel S. Houser
    Attorneys for Plaintiff

22